UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

DAWOOD N. SHALOMI & REGINE Y. SHALOMI,

    Plaintiffs,

v.

WESTERN TECHNOLOGIES, INC., an Arizona Corporation; DOES I through X; & ROE CORPORATION I through X,

    Defendants.

2:04-CV-00168-PMP-LRL

O R D E R

Presently before this Court is Defendant and Third Party Plaintiff Western Technologies, Inc.'s ("Western") Motion for Summary Judgment (Doc. #140) with supporting affidavit (Doc. #142), filed on February 12, 2007. Western also filed a statement of undisputed facts (Doc. #148) on February 13, 2007 and a newly disclosed exhibit (Doc. #156) on February 26, 2007. Plaintiffs filed an Opposition (Doc. #161) with supporting exhibits (Doc. #162, #163, #164) on March 2, 2007. Western filed a Reply (Doc. #174) with supporting affidavit (Doc. #175) on March 12, 2007.

Also before the Court is Third Party Defendants' Motion for Summary Judgment (Doc. #146) with supporting exhibits (Doc. #147), filed on February 12, 2007. Western filed an Opposition (Doc. #157) with supporting affidavit (Doc. #155) and exhibits (Doc. #158) on February 27, 2007. Plaintiffs filed an Opposition (Doc. #166) with supporting exhibits (Doc. ##167-172) on March 2, 2007. Third Party Defendants filed a Reply (Doc. #176) on March 13, 2007.

## I. BACKGROUND

On January 28, 1998, Defendant Western issued a Phase I Environmental Site Assessment Report ("Report") for property owned by Eagle Rock Investments, LLC ("Eagle"). (Aff. of Attorney & Exs. in Supp. of Def. & Third Party Pl. Western Technologies, Inc.'s Mot. for Summ. J. [Doc. #142, "Western's Exs."], Ex. G.) The Report did not mention the presence of 99,000 pounds of anhydrous ammonia located and used at a Breyers/Good Humor Ice Cream Plant adjacent to Eagle's property. (Id.; Western's Exs., Ex. Y at 2.) In January and August 2000, Eagle's property was appraised at $3,675,000 and $2,010,000, respectively. (Western's Exs., Exs. N, O.)

In September 2000, Plaintiffs Dawood and Regine Shalomi purchased the subject property from Eagle for approximately $1.85 million. (Western's Exs., Exs. E, Y at 2.) During the property transaction, Plaintiffs received a copy of Defendant's Report prepared for Eagle. (Western's Exs., Ex. A at 45-46.)

At the time the Plaintiffs purchased the property, an agreement existed between the City of Henderson and Eagle restricting zoning of the property to industrial use only. (Western's Exs., Ex. K.) According to Plaintiffs, they first became aware of the anhydrous ammonia's presence and possible dangers during a March 18, 2003 Henderson City Council public hearing held to consider a proposal to re-zone and develop the property for residential use. (Western's Exs., Ex. U.) During this hearing, attendees discussed the hazardous nature of the ammonia next to Plaintiffs' property and its potential to cause serious injury to future residents. (Id.) The City Council rejected the proposal to re-zone the property. (Id.)

Plaintiffs brought this action against Defendant Western in Nevada state court, contending Western negligently failed to mention the presence of hazardous quantities of ammonia near their property in the 1998 Report, and had Plaintiffs known about the ammonia, they would not have purchased the property. (Notice of Removal [Doc. #1], Ex.

A, Compl.)  Plaintiffs asserted claims against Defendant Western for breach of contract, negligence, negligent misrepresentation, and fraud.  (Compl. ¶¶ 7-39.)  On February 12, 2004, Defendant removed the case to this Court based on diversity jurisdiction.  (Notice of Removal.)  The Court dismissed the fraud count for failure to plead with particularity.  (Order [Doc. #14].)

In April 2006, Defendant Western moved to implead Third Party Defendants Vista Information Solutions, Inc. ("Vista") and its successor companies, Fidelity National Information Services, Inc. ("Fidelity") and Environmental Data Resources, Inc. ("EDR").  (Def. Western Technologies, Inc.'s Mot. to Implead Vista Information Solutions, Inc.; Fidelity National Information Services, Inc. & Environmental Data Resources, Inc. [Doc. #54].)  Western asserted it used Vista's environmental database to prepare the Report and Vista's database failed to identify and include the anhydrous ammonia at the Good Humor plant.  (Id.)  The Court granted the motion.  (Mins. of Proceedings [Doc. #58].)  Western thereafter filed a Third Party Complaint against Vista, Fidelity, and ERD,[1] asserting claims for indemnity, contribution, and apportionment in the event Western is deemed liable to Plaintiffs based on the Report.  (Western Technologies, Inc.'s Third-Party Compl. [Doc. #59].)

Defendant Western moves for summary judgment as to Plaintiffs' remaining claims against it, contending Plaintiffs cannot state any damages for its claims.  Western argues Plaintiffs never disclosed throughout discovery what diminution in property value they have suffered and Plaintiffs therefore cannot establish damages.  Western also argues Plaintiffs cannot recover on a theory of damages relating to the property's alleged stigma from being located near an ammonia source.  Plaintiffs respond that their son-in-law,

---

[1] By stipulation, all claims between Western and EDR have been dismissed.  (Stip. [Doc. #133]; Order [Doc. #137].)

3

Joseph Golshan ("Golshan"), is a part owner of the property and, as owner, he can testify as to the property's value and other pecuniary losses Plaintiffs have suffered.

Third Party Defendants Vista and Fidelity move for summary judgment, arguing Western's employee was negligent in using Vista's database, and thus Vista and Fidelity owe no duty of indemnity or contribution to Western. Additionally, Vista and Fidelity argue that because Plaintiffs cannot establish damages for their claims against Western, Vista and Fidelity owe no indemnity or contribution to Defendant Western. Western responds that its employee used the database under prevailing standards and thus summary judgment is not warranted. Western agrees Plaintiffs cannot show damages, and Western's third party claims are derivative of Plaintiffs' claims against Western.

## II. DISCUSSION

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law defines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. Id.; Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001).

### A. Western's Motion for Summary Judgment

Defendant Western moves for summary judgment, contending Plaintiffs cannot prove damages because they failed to provide damages calculations or theories during

4

1  discovery, any damages theory would be speculative, Plaintiffs have no damages expert,
2  and Plaintiffs cannot show "stigma" damages to the property absent a showing of physical
3  impact on the property.
4         Plaintiffs respond that they have suffered damages because they have been unable
5  to market the property since the March 2003 City Council meeting.  Additionally, Plaintiffs
6  contend they have expended sums pursuing litigation against the City of Henderson and
7  Good Humor.  Plaintiffs thus contend they have incurred carrying costs and attorneys' fees
8  in excess of $600,000.
9         Plaintiffs' remaining claims are breach of contract, negligence, and negligent
10 misrepresentation.  Each of these claims requires Plaintiffs to prove damages.  See Saini v.
11 Int'l Game Tech., 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (citing Richardson v. Jones,
12 1 Nev. 405, 405 (Nev. 1865)) (breach of contract); Barmettler v. Reno Air, Inc., 956 P.2d
13 1382, 1387 (Nev. 1998) (negligent misrepresentation); Doud v. Las Vegas Hilton Corp.,
14 864 P.2d 796, 798 (Nev. 1993) (negligence).  Plaintiffs "need not prove [their] damages
15 with mathematical precision; [they] need only establish a reasonable basis for ascertaining
16 those damages."  Central Bit Supply, Inc. v. Waldrop Drilling & Pump, Inc., 717 P.2d 35,
17 37 (Nev. 1986).
18        Nevada has not specifically addressed the measure of damages when an
19 environmental professional purportedly fails to report an environmental condition impacting
20 the property's value.  However, in an analogous case, Nevada permitted a plaintiff to
21 recover "out of pocket" losses incurred due to a defendant's negligent performance of a
22 survey.  Hanneman v. Downer, 871 P.2d 279, 283 (Nev. 1994).  Out of pocket loss is the
23 difference between the amount paid for the property and the actual value of the property at
24 the time of purchase.  See Randono v. Turk, 466 P.2d 218, 223 (Nev. 1970) (defining "out-
25 of-pocket" loss as "the difference between what [plaintiff] gave and what he actually
26 received"); see also Gagne v. Bertran, 275 P.2d 15, 22 (Cal. 1954) ("If the property was

5

worth less than [the plaintiffs] paid for it, defendant is liable for the difference. On the other hand, if the lots were worth what plaintiffs paid for them, plaintiffs were not damaged by their purchase, for even though they would not have bought the lots had they known the truth, they nevertheless received property as valuable as that with which they parted.").[2]

Federal Rule of Civil Procedure 26(a)(1)(C) requires the parties to provide "a computation of any category of damages claimed by the disclosing party, making available for inspection or copying . . . the documents or other evidentiary material . . . on which such computation is based . . . ." Rule 26(e)(1) imposes on a party the duty to supplement Rule 26(a) disclosures if the party learns the disclosed information is incomplete or incorrect. Rule 37(c)(1) prohibits the use at trial of any information required to be disclosed by Rule 26(a) or (e)(1) that is not properly disclosed. See also Wong v. Regents of Univ. of Cal., 379 F.3d 1097, 1105 (9th Cir. 2004). The non-disclosing party may escape Rule 37(c)'s sanction if the failure to disclose was substantially justified or was harmless. Fed. R. Civ. P. 37(c)(1). No evidence of bad faith on the part of the non-disclosing party is required to exclude evidence under Rule 37(c)(1). Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001). The party facing sanctions bears the burden of proving harmlessness. Id. at 1107.

Nevada permits a property owner to testify in condemnation cases as to the current value of his property. See Lucini-Parish Ins., Inc. v. Buck, 836 P.2d 627, 630 (Nev. 1992) ("An owner may testify as to the value of his property."). The theory behind this rule is that a property owner, "because of his ownership, is presumed to have special knowledge of the property and may testify as to its value." City of Elko v. Zillich, 683 P.2d 5, 8 (Nev. 1984). However, as stated in the case to which Nevada cites in support of this rule, "the

---

[2] This measure of damages is compatible with the usual method of determining damages for a breach of contract, which places the nonbreaching party in as good a position as if the breaching party had performed the contract. Colo. Env'ts, Inc. v. Valley Grading Corp., 779 P.2d 80, 84 (Nev. 1989).

6

owner's qualification to testify does not change the 'market value' concept and permit him to substitute a 'value to me' standard for the accepted rule, or to establish a value based entirely upon speculation." United States v. Sowards, 370 F.2d 87, 92 (10th Cir. 1966).

In addition to out of pocket losses, a party also may claim special damages in appropriate circumstances. "[W]hen a party claims it has incurred attorney fees as foreseeable damages arising from tortious conduct or a breach of contract, such fees are considered special damages," and the plaintiff must plead the attorneys' fees as special damages in the complaint. Sandy Valley Assocs. v. Sky Ranch Estate Owners Ass'n, 35 P.3d 964, 969 (Nev. 2001); Fed. R. Civ. P. 9(g) ("When items of special damage are claimed, they shall be specifically stated."). A complaint's request for attorneys' fees in a general prayer for relief does not plead special damages. Sandy Valley Assocs., 35 P.3d at 969. To recover attorneys' fees as special damages, the attorneys' fees must be the "natural and proximate consequence of the injurious conduct." Id.

Plaintiffs Dawood and Regine Shalomi both were unable to testify as to damages during their depositions. Dawood Shalomi testified he could not state in what amount Western's conduct damaged the property, stating "I don't have [an] exact figure, but it's hurt us a lot." (Western's Exs., Ex. B at 27.) Dawood Shalomi further stated damages is a matter for an expert to determine. (Id. at 93, 97, 151.) Regine Shalomi testified she knew nothing about the transaction or her losses. (Western's Exs., Ex. C.) In response to Western's interrogatory regarding damages, Plaintiffs stated:

> The Plaintiffs object to answering this Interrogatory at this time. This answer is subject to information and/or documentation prepared, in large part, by Plaintiffs' expert witnesses. The Plaintiffs will supplement their response to this Interrogatory pursuant to the Stipulated Discovery Plan and Scheduling Order, and the deadline contained therein, regarding the exchange of expert witness information and/or documentation. Moreover, counsel for the Parties have agreed in principal that any information requested herein will only come by way of supplementation, pursuant to the Stipulated Discovery Plan and Scheduling Order, and will not be revealed at this time.

(Western's Exs., Ex. CC at 6.) Plaintiffs have not presented any expert testimony regarding damages.[3] Plaintiffs also have not provided any damages calculation nor supplemented this interrogatory response. Plaintiffs therefore are in violation of Federal Rule of Civil Procedure 26(a) and their failure to provide a damages calculation and supporting documentation precludes admission of this type of evidence at trial.

Even if the Court disregarded Plaintiffs' Rule 26(a) violation, the only evidence of damages Plaintiffs provide in response to Western's motion for summary judgment is the affidavit of Plaintiffs' son-in-law, Golshan. In his affidavit, Golshan states the ammonia issue has affected his ability to sell the property and Plaintiffs have expended over $600,000 in attorneys fees litigating with the City of Henderson and Good Humor. (Golshan Aff. at 1-2.) Golshan also avers he is "ready, willing, and able to testify as to potential damage to the property" as a result of Western's alleged negligence and he is qualified to testify regarding other pecuniary damages to Plaintiffs. (Id.) Golshan states he is an experienced real estate and commercial developer. (Id. at 3.) At his deposition, Golshan testified the property would be worth ten to twelve million dollars without the ammonia issue, but he could not place a value on the property with the ammonia issue, stating it is worth what someone is willing to pay for it. (Western's Exs., Ex. A at 58-59, 63, 287.) Plaintiffs contend Golshan, as a property owner, is entitled to opine on the value of his property and thus Plaintiffs have presented evidence of damages raising a genuine issue of fact for trial.

Even if the Court considered Golshan's testimony as a property owner, a matter which Western contests,[4] and assuming without deciding that the property owner's

---

[3] Western's expert has opined Plaintiffs have not been damaged because the property currently is at market value. (Western's Exs., Exs. X, Y.)

[4] Until recently, only Dawood and Regine Shalomi were the recorded property owners. (Western's Exs., Ex. B at 99-100.) However, Plaintiffs contend Golshan owned one half of the property, later reduced to one third, through a verbal agreement with Dawood Shalomi. (Western's MSJ, Ex. A at 76-77; Pls.' Opp'n to Def./Third-Party Pl. Western Technologies, Inc.'s Mot. for Summ.

qualification to testify regarding his property's value in condemnation cases extends to breach of contract and negligence actions, Golshan did not testify at his deposition nor aver in his affidavit how much the property actually was worth compared to how much Plaintiffs paid for it in September 2000.[5]  Golshan therefore does not offer an opinion regarding Plaintiffs' out of pocket losses.

Moreover, Golshan offers no testimony on the current value of his property as it exists.  Instead, he opines on the property's value in the hypothetical situation where the Good Humor plant does not use ammonia.  Golshan's testimony is speculative.  Golshan offers no basis to support his conclusion that the property would be worth ten to twelve million dollars if the property were not adjacent to an ammonia source nor does he explain what method he used to determine the property's hypothetical value.  While Golshan's status as property owner may give him special knowledge as to his property's current value, it would stretch the rule to conclude that a property owner automatically is equipped to analyze what his property might be worth under other circumstances, or whether and to what amount a particular factor, such as being adjacent to an ammonia source, increased or decreased property values.

Such an analysis is particularly complex where, as here, the property has increased in value substantially since Plaintiffs purchased it.  Plaintiffs have received various offers for the property in the past two years ranging from $6 million to a $9 million joint venture offer.  (Western's Exs., Ex. Q, Ex. Y at 2.)  Even at the most modest offer of

---

J. [Doc. #161], Ex. 2, Aff. Of Golshan ["Golshan Aff."] at 1.)  In November 2006, Plaintiffs recorded a sale of an undivided one third interest in the property to Golshan's company, Horizon 26, LLC, for $10.  (Aff. of Attorney & Exs. in Supp. of Def. & Third-Party Pl. Western Technologies, Inc.'s Reply to Pls.' Opp'n to Third-Party Defs.' Mot. for Summ. J. [Doc. #175], Exs. I, J.)

[5] In August 2000, Eagle's property was appraised at $2,010,000.  (Western's Exs., Ex. O.)  Plaintiffs purchased the property from Eagle the next month for approximately $1.85 million, which was less than its recently appraised value.  (Western's Exs., Exs. E, Y at 2.)

approximately $6 million, Plaintiffs' property more than tripled in value from what Plaintiffs paid in five years. Plaintiffs offer no evidence the parties making these offers withdrew or reduced their offers upon learning about the ammonia issue.

Although Golshan states in his affidavit he is ready, willing, able, and qualified to testify regarding damages, he does not actually do so in response to Western's motion for summary judgment. Golshan does not provide an amount of damages or explain how he will make such a determination at trial. Such unsupported speculation does not provide a reasonable basis for ascertaining damages, and therefore does not raise a genuine issue of material fact regarding damages.

Finally, Golshan states he will testify regarding pecuniary losses Plaintiffs suffered, including over $600,000 Plaintiffs expended litigating against the City of Henderson and Good Humor. Plaintiffs' Complaint does not plead special damages in the form of attorneys' fees for litigating against Good Humor and the City of Henderson. Plaintiffs did not indicate in response to Western's interrogatory that special damages in the form of attorneys' fees were at issue in this matter. Plaintiffs present no evidence they supplemented this discovery response to indicate they were claiming special damages in the form of attorneys' fees. Moreover, Plaintiffs offer no evidence as to the substance of the litigation between Good Humor, the City, and Plaintiffs. Consequently, Plaintiffs offer no evidence the attorneys' fees were the natural and proximate consequence of Western's failure to report the ammonia's presence. Plaintiffs did not plead a claim for special damages, did not make the mandatory Rule 26(a) disclosures and supplements regarding this damages theory, and, in any event, have not presented evidence raising a genuine issue of material fact for trial regarding these damages.

Because Plaintiffs failed to comply with Rule 26(a), and because they have failed to raise a genuine issue of material fact regarding damages, the Court will grant Western's motion for summary judgment and enter judgment against Plaintiffs and in favor of

Defendant Western.[6]

**B. Vista and Fidelity's Motion for Summary Judgment**

Third Party Defendants Vista and Fidelity move for summary judgment, asserting they are not liable for indemnity, contribution, or apportionment because Western's employee was negligent in using Vista's environmental database and thus the database's failure to indicate the ammonia's presence was due to Western's negligence, not Vista's. Additionally, Vista and Fidelity argue that because Plaintiffs cannot show damages, Western is not liable to Plaintiffs and Vista and Fidelity therefore are not derivatively liable to Western. Western responds that its employee was not negligent in using the database and thus genuine issues of fact remain regarding Vista and Fidelity's liability should Plaintiffs prevail on the merits of their claims. However, Western agrees that because Plaintiffs cannot demonstrate damages, neither Western nor the Third Party Defendants are liable.

Because the Court will grant Western's motion for summary judgment as to Plaintiffs' claims against Western, no liability on the underlying claims exist. Western and the Third Party Defendants agree Western's third party claims are derivative of Plaintiffs' claims against Western, and if Plaintiffs cannot show damages, neither Western nor the Third Party Defendants are liable in this matter. (Third-Party Defs.' Mot. for Summ. J. [Doc. #146] at 18, 20-21; Def. & Third-Party Pl. Western Technologies, Inc.'s Response (Opp'n) to Third-Party Defs.' Vista Information Solutions, Inc. & Fidelity National Information Services, Inc.'s Mot. for Summ. J. [Doc. #157] at 2-3; Third-Party Defs.' Reply to Opp'ns to Mot. for Summ. J. [Doc. #176] at 13-15.) The Court therefore will grant Third Party Defendants Vista and Fidelity's motion for summary judgment.

///

///

---

[6] Because the Court grants Western's motion on this basis, the Court need not address Western's other arguments in support of summary judgment in its favor.

11

### III. CONCLUSION

IT IS THEREFORE ORDERED that Defendant and Third Party Plaintiff Western Technologies, Inc.'s Motion for Summary Judgment (Doc. #140) is hereby GRANTED. Judgment is hereby entered in favor of Defendant Western Technologies, Inc. and against Plaintiffs Dawood N. Shalomi and Regine Y. Shalomi.

IT IS FURTHER ORDERED that Third Party Defendants' Motion for Summary Judgment (Doc. #146) is hereby GRANTED. Judgment is hereby entered in favor of Third Party Defendants Vista Information Solutions, Inc. and Fidelity National Information Services, Inc. and against Third Party Plaintiff Western Technologies, Inc.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike Rebuttal Expert Witness (Doc. #129) is hereby DENIED as moot.

IT IS FURTHER ORDERED that Defendant's Motion for Limited Additional Discovery and to Allow for Supplementation of Dispositive Motions re Rebuttal Expert Medhekar (Doc. #143) is hereby DENIED as moot.

IT IS FURTHER ORDERED that Defendant's Motion to Strike Cumulative Expert Witness Designations and to Exclude Testimony at Trial (Doc. #144) is hereby DENIED as moot.

IT IS FURTHER ORDERED that Defendant's Motion to Compel Appearance by Crown Commercial Investments' Person Most Knowledgeable David Zarabi and Motion to Take Trial Preservation Deposition (Doc. #145) is hereby DENIED as moot.

DATED: April 20, 2007.

_____
PHILIP M. PRO
United States District Judge